**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

MOUNT VERNON FIRE INSURANCE   )
COMPANY   )
   )
       Plaintiff,   )
   )
v.   )   Civil Action No.: 3:09-cv-817
   )
V. CASSEL ADAMSON, JR.,   )
and   )
HAROLD O. MARTIN,   )
   )
       Defendants.   )

**MOUNT VERNON FIRE INSURANCE COMPANY'S**
**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Mount Vernon Fire Insurance Company ("Mount Vernon"), by counsel, hereby submits the following Memorandum in Support of its Motion for Summary Judgment.

**INTRODUCTION**

This insurance coverage dispute concerns whether Mount Vernon owes a defense and indemnity under a commercial general liability policy to V. Cassel Adamson, Jr. t/a Pocoshock Ridge Apartments ("Adamson") for claims asserted against him by Harold O. Martin ("Martin"). Martin alleges that he suffered bodily injury and property damage as a result of mold contamination in an apartment unit owned by Adamson. Martin filed a lawsuit against Adamson seeking compensatory damages, punitive damages, and injunctive relief. Although the lawsuit includes five separate counts, all of the causes of action and damages alleged arise out of Martin's alleged exposure to mold.

The insurance policy issued by Mount Vernon to Adamson contains an absolute pollution exclusion that unequivocally bars coverage for bodily injury or property

damage arising from exposure to organic pathogens, including mold.  By reason of this exclusion, Mount Vernon has no obligation to provide a defense or indemnity to Adamson for any of the claims asserted in the underlying tort case. Accordingly, Mount Vernon seeks a declaration that, as a matter of law, it owes no duty to defend or indemnify Adamson for Martin's claims.

Alternatively, Mount Vernon seeks a declaration that it has no duty to indemnify Adamson for punitive damages or the costs of complying with an injunction.  This alternative request for partial summary judgment is based upon the exclusions in the Policy for damages expected or intended by the insured and punitive damages as well as the fact that the claims for equitable relief are not covered under the Policy.

## STATEMENT OF UNDISPUTED FACTS

### A.    The Allegations in the Underlying Action.

Harold O. Martin filed an action in the Circuit Court for Henrico County against V. Cassel Adamson styled *Harold O. Martin v. V. Cassel Adamson, Jr., t/a Pocoshock Ridge Apartments*, Case No.: CL09002700-00, asserting that he has suffered bodily injury and property damage as a result of mold in his apartment (the "Underlying Action").[1] The Amended Complaint in the Underlying Action contains five Counts alleging bodily injury and property damage arising from mold exposure:  Violation of the Virginia Residential Landlord Tenant Act (Count I); Negligence (Count II); Negligence *Per Se* Virginia Residential Landlord and Tenant Act (Count III); Negligence *Per Se* Virginia Building Code (Count IV); and Fraud (Count V).  *See* Ex. 2.

---

[1] The original Complaint and the Motion for Injunction in the Underlying Action are attached as Exhibit 1. On March 18, 2010, Martin filed a First Amended Complaint, which is attached as Exhibit 2.

Martin's Amended Complaint demands compensatory damages in the amount of $1,900,000, punitive damages in the amount of $350,000, and injunctive relief. *See* Am. Complaint, pg. 22, at Ex. 2. Martin also filed a separate Motion for Injunctive Relief. *See* Motion, at Ex. 1.

In the Underlying Action, Martin alleges that Adamson was both an owner and a landlord of Pocoshock Apartments. *See* Am. Complaint, ¶ 4, at Ex. 2. Martin asserts that he resided at 5568 North Handel Court in Pocoshock Apartments with only minor interruption from 2003 until October 5, 2009. *Id.* ¶¶ 3, 4 and 5. Martin's mother signed the original lease agreement in 2001 for the unit at 5568 North Handel Court, and Martin contends that his mother's signature was forged on an amended lease agreement in March 2008. *Id.* ¶¶ 6, 7, and 9. Martin alleges that he was at all times an "authorized occupant" of the subject unit or, in the alternative, that he was a "tenant" under the Virginia Residential Landlord Tenant Act. *Id.* ¶¶ 11 and 12.

According to the Complaint, Martin observed mold growth in the apartment in February 2008 and notified Adamson's employee. *Id.* ¶¶ 13 and 14. Martin alleges that within that same timeframe a leaking HVAC unit caused further water and mold problems in the apartment, that Adamson was on notice of these issues, and that Adamson's agents took some steps to remediate the issues. *Id.* ¶¶ 16-18, 23-26. The Complaint further alleges that Adamson's agents represented that the issue "would dry up and be all right" and that the observed discoloration was actually "dirt." *Id.* ¶¶ 18, 26.

Throughout the Complaint in the Underlying Action, Martin asserts that Adamson failed to maintain a fit premises in that he allowed conditions of excessive moisture to exist, leading to unremedied and excessive growth of mold in the apartment unit at issue,

and that Adamson failed to adequately remediate these conditions. *See*, *e.g.* Am. Complaint ¶¶ 51, 63 and 70. Martin claims that he became ill and that he suffered property damage to his possessions as a result of the mold. *Id.* ¶¶ 57, 66, 71 and 77. Martin claims that in October 2008 he began to experience "unfamiliar illness and pain" and that in January 2009 his symptoms became worse. *Id.* ¶¶ 19 and 20. Martin asserts that he was diagnosed with pulmonary fibrosis in the summer of 2009 due to the mold in the apartment unit. *Id.* ¶ 21.

The Amended Complaint alleges that Adamson's conduct related to the mold contamination was negligent, breached the Virginia Residential Landlord and Tenant Act ("VRLTA"), and violated the Virginia Building Code.   Martin further alleges that Adamson's conduct in connection with the mold remediation efforts and the 2008 lease agreement constituted fraud. *Id.* ¶¶ 9, 12, 18, 26, 79.

Finally, the Amended Complaint contains a "Request for Punitive Instruction Against Defendant V. Cassel Adamson, Jr.," which asserts that all of the allegations in the Underlying Action "reflect deliberate, reckless, willful and wanton behavior showing reckless abandon and carelessness with respect to the health and well-being of Plaintiff." *Id.* ¶ 85. He also asserts that Adamson's actions "constitute acts of willful behavior that shock the conscious of the court." ¶ 86. Martin, therefore, requests a jury instruction for punitive damages. *Id.* ¶ 89.

### B.    The Policy.

Mount Vernon issued a Commercial General Liability Policy with effective dates February 14, 2006 to February 14, 2007. The Policy was renewed for two subsequent, one-year terms. The original policy and the renewal policies are identical in all relevant

respects and are referenced collectively as the "Policy." [2]   The relevant policy provisions

are as follows:

### SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY[3]

**1.**     **Insuring Agreement**

    **a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

* * *

    **b.**   This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

Form CG 00 01 10 01, pg. 1 of 16.

    The following exclusions under the Bodily Injury and Property Damage Coverage are relevant here:

**2.**     **Exclusions**

    This insurance does not apply to:

    **a.**     **Expected Or Intended Injury**
        "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not

---

[2] Mount Vernon attached the 2006 Policy, the 2007 Policy and the 2008 Policy as Exhibits A, B, and C to its Complaint filed in this action.  As the relevant policy terms are identical, Mount Vernon attaches only a copy of the 2008 Policy hereto as Exhibit 3.
[3] The First Amended Complaint fails to allege damages because of "personal and advertising injury" and Coverage B in the Policy – "Personal and Advertising Injury" – is not implicated by the allegations in the Underlying Action.

5

apply to "bodily injury" resulting from the use of
reasonable force to protect persons or property.:

\* \* \*

Form CG 00 01 10 01, pg. 2 of 16.

The Policy, by Endorsement, contains the following "ABSOLUTE EXCLUSION
FOR POLLUTION, ORGANIC PATHOGEN, SILICA, ASBESTOS AND LEAD WITH
A HOSTILE FIRE EXCEPTION":

This insurance does not apply to:

     **f.**     **Pollution, Organic, Pathogen, Silica, Asbestos and Lead**
         **(1)**     "Bodily injury" or "property damage"; or

         **(2)**     Diminishing or lessening in value of property or for
damages from the taking, use or acquisition or
interference with the rights of others in property or
air space; or

                  \* \* \*

arising directly, indirectly, in concurrence with or in any
sequence out of the actual, alleged or threatened presence
of or exposure to, ingestion, inhalation, absorption, contact
with discharge, dispersal, seepage, release or escape of
"pollutants", "organic pathogens", "silica", asbestos, or
lead, whether or not any of the foregoing are (1) sudden,
accidental or gradual in nature; (2) intentional; or (3)
expected or intended from the standpoint of the insured.

This exclusion applies even if the "pollutant", "organic
pathogen", "silica", asbestos, or lead has a function in, or is
used by you in your business, operations, premises, site or
location.

                  \* \* \*

"Organic pathogen" means any organic irritant or contaminant,
including but not limited to mold, fungus, bacteria or virus,
including but not limited to their byproduct such as mycotoxin,
mildew, or biogenic aerosol.

                  \* \* \*

L 599 (10-07).

Finally, the Policy includes an Endorsement excluding coverage for punitive damages:

### PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION

> Regardless of any other provision of this policy, this policy does not apply to punitive or exemplary damages.
>
> If a suit is brought against any insured, and falls within the coverage provided by the policy, seeking both compensatory damages (damages for economic loss and pain and suffering) and punitive or exemplary damages (damages as a means of punishment), no coverage shall be provided by this policy for any costs, interest, defense costs or damages attributable to punitive or exemplary damages.
>
> All other terms and conditions of this policy remain unchanged. This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

L-224 (9/05).

## ARGUMENT

### I.   The Legal Standards.

#### A.   The Summary Judgment Standard.

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  For purposes of Rule 56, a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Although all reasonable inferences are to be drawn in favor of the party opposing summary judgment, a properly supported Rule 56 motion may not be defeated by mere

allegations or denials. *Anderson*, 477 U.S. at 248, 250-52; *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986). Rather, in order to defeat summary judgment, the nonmoving party must come forward with *specific* facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248, 250.

      **B.**      **Applicable  Principles of Insurance Contract Construction.**

A federal court sitting in diversity must apply the choice of law rules of the state in which it sits. *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.,* 407 F. 3d 631, 635 (4th Cir. 2005). Where an insurance policy is delivered to an insured in Virginia, as is the case here, Virginia law controls its interpretation. *Id.*

Under Virginia law, an insurance policy is interpreted like any other contract. *State Farm Fire & Cas. Co. v. Walton*, 244 Va. 498, 502, 423 S.E.2d 188, 191 (1992). The interpretation of a contract is a question of law for the Court. *First Am. Bank of Va. v. J.S.C. Concrete Constr. Co.*, 259 Va. 60, 66, 523 S.E.2d 496, 500 (2000). If the policy is plain and unambiguous, the language will be enforced as written. *Gov't Employees Ins. Co. v. Moore*, 266 Va. 155, 580 S.E.2d 823, 828 (2003). The insured bears the burden to bring its claim within the terms and scope of coverage afforded under the insuring agreement. *Maryland Cas. Co. v. Cole*, 156 Va. 707, 716, 158 S.E. 873, 876 (1931) ("The burden is upon the policyholder to bring itself within the terms of the policy."). An insurer bears the burden to establish that an exclusion applies. *Furrow v. United States Life ins. Co.*, 237 Va. 77, 80, 375 S.E.2d 738, 740 (1983).

An insurer's duty to defend arises where the "pleading 'alleges facts and circumstances, some of which, if proved, fall within the risk covered by the Policy.'" *Parker v. Hartford Fire Ins. Co.*, 222 Va. 33, 35, 278 S.E.2d 803, 804 (Va. 1981). By

contrast, there is no duty to defend if it is clear from the pleading that the insurer would not be liable under the policy.  *Reisen v. Aetna Life & Cas. Co.*, 225 Va. 327, 331, 302 S.E.2d 529, 531 (1983).  As discussed below, it is clear that the allegations set forth in the Underlying Action are not covered by the Policy.  Mount Vernon therefore owes no duty to defend or indemnify Adamson in this matter.

## II.    Coverage A – Bodily Injury and Property Damage Liability.

### A.    The Mold Exclusion Bars Coverage.

The crux of each Count of Martin's Amended Complaint is his claim that the mold in the apartment caused him to suffer bodily injury and property damage.  There is no coverage for these claims because the Policy contains an absolute exclusion for bodily injury and property damage claims arising out of mold exposure.

The plain language of the "Absolute Exclusion for Pollution, Organic Pathogen, Silica, Asbestos and Lead" in the Policy bars coverage for all of the claims and injuries alleged by Martin.  The Exclusion states that there is no coverage for "'bodily injury' or 'property damage'…arising directly, indirectly, in concurrence with or in any sequence out of the actual, alleged or threatened presence of or exposure to… 'organic pathogens.'"  The definition of "organic pathogen" includes mold.  Ex. 3, Endorsement, L 599.

Although the Virginia Supreme Court has never been called upon to interpret similar policy language in connection with a claim for injury due to mold, two federal district courts, applying Virginia law, have enforced the plain language of similarly-worded exclusions to bar coverage for costs or damages involving mold.  *See, e.g., Union Ins. Co. v. Riverpoint, L.C.*, Case No. 3:06cv372, 2007 WL 656895 (E.D. Va. Feb. 27,

2007); *Union Ins. Co. v. Williams Contracting, Inc.*, Case No. 3:05cv00075, 2006 WL 1582405 (W.D. Va. June 2, 2006).

In *Riverpoint*, the owner and property manager of an apartment complex sought coverage from Union Insurance Company for bodily injury and property damage claims arising out of exposure to mold in the claimants' apartment. The principal issue before the federal district court concerned whether the injuries suffered by the claimants occurred during the first policy period or the second policy period because the later policy contained a mold exclusion while the earlier policy did not. *See* 2007 WL 656895 at *1-2. In considering whether Union had a duty to defend, the court cited to the general insurance principle that exclusionary language is construed most strongly against the insurer and exclusions are enforceable only when they "unambiguously bring the particular act or commission within its scope." Id. at *2. The *Riverpoint* court went on to conclude that the underlying complaint clearly alleged that the mold did not begin to grow until after the later policy had incepted. Therefore, the court explained, "[the later] policy contained a fungus or spore exclusion endorsement which included mold exposure. The…claims are therefore excluded from coverage under the policy, and Union has no duty to defend Riverpoint and Thalhimer against those claims." *See* 2007 WL 656895 at *3.

In *Williams Contracting*, the insured sought coverage for bodily injury arising out of exposure to mold caused by faulty workmanship. 2006 WL 1582405. The insurance policy in that case contained an endorsement with a "Fungi or Bacteria Exclusion" that barred coverage for "'bodily injury' or 'property damage'…which would not have occurred but for the…alleged…inhalation of…exposure to, existence of, or presence of

any 'fungi' or bacteria on or within a building…[or] Any loss, cost or expense arising out of… 'fungi'…." The definition of "fungi" included mold. 2006 WL 1582405 at *4. The federal district court held that the "Fungi or Bacteria Exclusion" barred coverage. *See* 2006 WL 1582405 at *7.

Nationwide, courts have also enforced the plain language of such exclusions. For example, in *Arbella Protection Ins. Co. v. Arnold*, Case No. 06-1445, 2007 WL 2935449 (Mass. Super. Ct. Aug. 17, 2007), a court applied an Endorsement with language similar to the Mount Vernon Policy. The insured contractor in *Arnold* sought coverage for property damage claims against it arising out of its alleged failure to protect the claimants' home from rain during construction. The claimants asserted that water from rainstorms caused mold growth. The contractor's insurance policy contained a "Fungi Exclusion Endorsement" that stated that the policy did not apply to "bodily injury or property damage which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any 'fungi'…." 2007 WL 2935449 at *1.

The court found that the Endorsement warned the reader in bold and capital letters that it changed the policy and that it unambiguously added fungi and bacteria to the list of exclusions in the Policy's general exclusion section. Accordingly, the court held, "[b]ecause the Policy clearly and unambiguously excludes coverage for mold growth, Arbella is not required to defend and indemnify [the insured] in the underlying case." *Id.* at *3. *See also Pierre v. Potomac Ins. Co. of Illinois*, 583 F. Supp. 2d 806, 808 (N.D. Tex. 2008) (granting summary judgment for insurer because "the plain terms of the parties' insurance contract exclude coverage for damage resulting from fungus" and mold

is considered a fungus); *Westfield Ins. Co. v. Sheehan Constr. Co.*, 580 F. Supp. 2d 701 (S.D. Ind. 2008) (applying a "Fungi or Bacteria Exclusion" and holding that damages involving mold are excluded); *Hathaway Dev. Co., Inc. v. Illinois Union Ins. Co.*, 274 Fed. Appx. 787, 2008 WL 1773307 (11th Cir. Apr. 18, 2008) (applying exclusion barring coverage for property damage "which would not have occurred…but for the…presence of…any 'fungi' or bacteria on or within a building or structure…").

The Endorsement to the Mount Vernon Policy clearly and unambiguously excludes coverage for claims resulting from "organic pathogens," including "mold." Accordingly, the mold exclusion bars coverage for all of the claims and allegations in the Underlying Action, and Mount Vernon owes no duty to defend or indemnify Adamson against Martin in the Underlying Action.

**B.    The Policy Does Not Cover Claims For Equitable Relief.**

Martin's claims for injunctive relief do not give rise to a duty to defend or indemnify Adamson in the Underlying Action.  These claims are based upon equitable principles and are not claims for damages at law.  The Policy generally provides coverage for those sums that the insured has a legal obligation to pay as "damages" as a result of bodily injury, property damage, personal injury or advertising injury. Ex. 3, p. 1 of 16. The Policy does not define the term "damages," and the Virginia Supreme Court has not addressed the scope of that term in the context of insurance.  However, a number of courts outside this jurisdiction have held that the word "damages" refers to legal damages and does not include costs associated with complying with an injunction. *See, e.g., Aetna Cas. & Sur. Co. v. Hanna*, 224 F.2d 499 (5th Cir. 1955) (applying Florida law); *Jones v. Farm Bureau Mut. Ins. Co.*, 431 N.W.2d 242, 245 (Mich. Ct. App. 1988); *Ladd Constr.*

*Co. v. Ins. Co. of N. Am.*, 391 N.E.2d 568, 571-73 (Ill. App. Ct. 1979).  As the Fifth

Circuit explained in *Hanna*:

> Clearly, the policy covers only payments to third persons
> when those persons have a legal claim for damages against
> the insured on account of injury to or destruction of
> property.  The obligation of the insurer to pay is limited to
> 'damages', a word which has an accepted technical
> meaning in law.  Blacks Law Dictionary (3d Ed.) p. 499
> defines damages as:
>
> 'A pecuniary compensation or indemnity which may be
> recovered in the courts by any person who has suffered
> loss, detriment or injury, whether to his person, property, or
> rights, through the unlawful act or omission or negligence
> of another.'
>
> This is a far cry from the cost to unsuccessful litigants of
> complying with an injunctive decree.  It is equally a far cry
> from the expenses incurred by those litigants in resisting a
> chancery suit seeking such a decree.

*Aetna Cas. & Sur. Co. v. Hanna*, *supra* at 503.

The Underlying Action seeks temporary and permanent injunctive relief.

Injunctive remedies are equitable in nature, and the Policy does not provide coverage for

Martin's requests for equitable relief.

### C.    The Policy Excludes Coverage for Punitive Damages.

Finally, the Policy excludes coverage for punitive damages.  The Endorsement

clearly and unambiguously states that "no coverage shall be provided by this policy for

any costs, interest, defense costs or damages attributable to punitive or exemplary

damages." Ex. 3, Form L-224.[4]  Accordingly, Mount Vernon has no duty to indemnify

---

[4] At least one Virginia Court has held that even in the absence of a specific exclusion for punitive damages,
a liability policy does not provide coverage for punitive damages.  *See, e.g., Williams Contracting, supra*,
at *7 ("Because punitive damages are imposed to punish egregious conduct, and to serve as an example to
others, such damages cannot be said to arise 'because of 'bodily injury' or 'property damage.''")

Adamson for an award of punitive damages.

## <u>CONCLUSION</u>

For the foregoing reasons, Mount Vernon Fire Insurance Company owes no duty

to defend or indemnify V. Cassel Adamson in connection with the Underlying Action and

is entitled to summary judgment as a matter of law.  Mount Vernon respectfully requests

that this Court issue a declaration that it owes no duty to defend or indemnify V. Cassel

Adamson for the Underlying Action and enter summary judgment in its favor.


Dated:  July 30, 2010                                          Respectfully submitted,


                                                                 /s/
                                                                Elizabeth S. Skilling, Esq.
                                                                VSB No. 28063
                                                                Carson W. Johnson, Esq.
                                                                VSB No.  66047
                                                                Counsel for Mount Vernon Fire Insurance
                                                                Company
                                                                Harman, Claytor, Corrigan & Wellman, P.C.
                                                                P.O. Box 70280
                                                                Richmond, VA 23255
                                                                Phone:  (804) 747-5200
                                                                Fax:  (804) 747-6085
                                                                Email:  eskilling@hccw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of July, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

V. Cassel Adamson, Jr.
6510 Three Chopt Road
Richmond, VA 23226

A courtesy copy was also mailed this 30th day of July, 2010 to:

V. Cassel Adamson, Jr.
6510 Three Chopt Road
Richmond, VA 23226

   /s/
Elizabeth S. Skilling, Esq.
VSB No. 28063
Carson W. Johnson, Esq.
VSB No.  66047
Counsel for Mount Vernon Fire Insurance
Company
Harman, Claytor, Corrigan & Wellman, P.C.
P.O. Box 70280
Richmond, VA 23255
Phone:  (804) 747-5200
Fax: (804) 747-6085
Email:  eskilling@hccw.com
