IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MOUNT VERNON FIRE INSURANCE )
COMPANY, )
)
)
Plaintiff, )
)
v. ) CIVIL NO. 3:09cv817-HEH
)
V. CASSEL ADAMSON, JR., )
)
Defendant. )
)

## REPORT AND RECOMMENDATION

This matter is a declaratory judgment action that is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the Plaintiff's motion for summary judgment (Docket No. 14).[1] See 28 U.S.C. § 2201 et seq. The motion has been fully briefed and the Court has entertained oral argument. For the reasons set forth herein, it is the Court's recommendation that the Plaintiff's motion for summary judgment be GRANTED.

### I. BACKGROUND

In October 2009, Harold O. Martin ("Martin") filed suit against V. Cassel Adamson, Jr. ("Adamson") in the Circuit Court for Henrico County, Virginia (the "Underlying Action"). In that case, Martin alleges that he suffers from pulmonary fibrosis and other physical ailments

---

[1] In the alternative, the Plaintiff seeks partial summary judgment on the grounds that coverage for punitive damages and injunctive relief are unavailable. Because the Court's resolution of the pending motion is dispositive of all claims, any additional argument for relief is rendered moot, and the Court therefore will treat the instant motion as one seeking total dispositive relief.

caused by mold growing in an apartment that he rented from Adamson between March 2003 and October 2009. (Compl. ¶¶ 17-20.) Martin seeks to recover $1,900,000.00 in compensatory damages and $350,000 in punitive damages pursuant to five (5) theories of liability: (1) violation of the Virginia Residential Landlord Tenant Act ("VRLTA"); (2) negligence; (3) negligence *per se* based on violations of the VRLTA; (4) negligence *per se* based on violation of the Virginia Building Code; and (5) fraud. (Compl. ¶¶ 21-22.)

Adamson sought coverage from the Plaintiff in this action, Mount Vernon Fire Insurance Company ("Mount Vernon"), pursuant to a Commercial General Liability Insurance policy (the "Policy") that was in effect during the period alleged in the Underlying Action. (Compl. ¶¶ 8-9.) Mount Vernon has since provided Adamson with a defense subject to a reservation of rights. (Compl. ¶ 24; Answer ¶ 23; Sutton Aff. at attached reservation of rights letter.)

Mount Vernon agrees that damages arising out of Martin's bodily injuries and his property damage fall under the general coverage language of the Policy. (Pl.'s Br. at 5.) However, Mount Vernon further asserts that the following exclusion (the "Mold Exclusion") precludes coverage in the Underlying Action:

> This insurance does not apply to . . . "Bodily injury" or "property damage" . . . arising directly, indirectly, in concurrence with or in any sequence out of the actual, alleged or threatened presence of or exposure to, ingestion, inhalation, absorption, contact with discharge, dispersal, seepage, release or escape of . . . "organic pathogens."
> . . . .
> "Organic pathogen" means any organic irritant or contaminant, including but not limited to *mold*, fungus, bacteria or virus, including but not limited to their byproduct such as mycotoxin, mildew, or biogenic aerosol.

(Compl. at Ex 3.)

Mount Vernon filed the instant action seeking a declaration that it has no obligation to

provide either a defense or ultimate liability coverage to Adamson for the Underlying Action. It has incorporated a copy of the Policy, including all applicable exclusions to coverage, and the reservation of rights letter as part of the record. Adamson, acting *pro se*, has filed his opposition brief, but he has not disputed Mount Vernon's statement of the undisputed facts.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56(c). In considering whether to grant a motion for summary judgment, the Court must assess the evidence offered by both parties and "determine whether there is a genuine issue for trial" after viewing the evidence in the light most favorable to the non-moving party and resolving all factual disputes in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment is particularly well-suited for resolution of insurance coverage disputes because the construction of insurance contracts is a legal question. St. Paul Fire & Marine Ins. Co. v. Jacobson, 826 F. Supp. 155, 157 (E.D. Va. 1993), aff'd 48 F.3d 778 (4th Cir. 1995).

## III. DISCUSSION

### A.  Interpretation of Insurance Policies under Virginia Law

The parties agree that Virginia law controls.[2] Under Virginia law, an insurance policy is a

---

[2]A federal court sitting in diversity must apply the choice of law rules of the state in which it sits. Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938); Resource Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005). Where an insurance policy is delivered to an insured in Virginia, as the parties agree is the case here, Virginia law controls its interpretation. Id.

contract, requiring courts to give the words in the policy their ordinary and usual meaning. State Farm Fire & Cas. Co. v. Walton, 423 S.E.2d 188, 191 (Va. 1992). Virginia strictly adheres to the "plain meaning" rule whereby: "an agreement is complete on its face and is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself . . . because the writing is the repository of final agreement between the parties." Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 405 (4th Cir. 1998). Policy language is ambiguous only if "it may be understood in more than one way or when it refers to two or more things at the same time." Id.

Generally, "[e]xclusionary language in an insurance policy will be construed most strongly against the insurer and the burden is upon the insurer to prove that an exclusion applies." Transcon. Ins. Co. v. RBMW, Inc., 551 S.E.2d 313, 318 (Va. 2001). Mount Vernon, therefore, bears the burden of proving that the Mold Exclusion clearly and unambiguously excludes the Underlying Action from coverage.

General "pollution exclusions" have been heavily litigated in this and other courts. See, e.g., Firemen's Ins. Co. v. Kline & Son Cement Repair, Inc., 474 F. Supp. 2d 779 (E.D. Va. 2007); City of Chesapeake v. State Self-Insurers Risk Retention Group, Inc., 628 S.E.2d 539, 540 (Va. 2006). In such cases, the policy exclusion often includes a definition of "pollutant" that, in turn, relies upon the undefined term "contaminant." Firemen's Ins. Co., 474 F. Supp. 2d at 783; City of Chesapeake, 628 S.E.2d at 541. In giving the term "contaminant" meaning, courts have turned to sources outside the policy, such as environmental statutes. See City of Chesapeake, 628 S.E.2d at 540-41.

In this case, the Court does not need to go beyond the four corners of the Policy to

determine the meaning of the applicable language. The Policy excludes "organic pathogens" and explicitly defines the term to include, among other things, "mold, fungus, bacteria, or virus." (Compl. at Ex 3.) Therefore, the Policy clearly and unambiguously excludes from coverage any bodily injury or property damage arising out of exposure to mold.[3]

## B. Applicability of the Mold Exclusion to the Underlying Action

Because the Policy unambiguously excludes coverage for occurrences arising out of mold exposure, the Court must next determine the extent to which the Underlying Action "falls" within the exclusion. Adamson argues that the complaint in the Underlying Action "is so broadly worded as to possibly include indemnification." (Def.'s Br. at 3.) He fails, however, to identify any specific allegation in Martin's Complaint in the Underlying Action that would result in liability for anything other than exposure to mold.[4]

"[I]t is well-recognized that an 'insurer's obligation to defend is broader than its obligation to pay.'" CACI Int'l, 566 F.3d at 155 (quoting Brenner v. Lawyers Title Ins. Corp., 397 S.E.2d 100, 102 (Va. 1990)). "[W]hile the duty to defend is based on the allegations in the underlying complaint, the duty to indemnify relies on litigated facts." Id.

Virginia applies the "'potentiality rule,' wherein 'an insurer's duty to defend is triggered if there is *any possibility* that a judgment against the insured will be covered under the insurance policy.'" CACI Int'l, Inc., 566 F.3d at 153 (emphasis added). To determine whether there is a

---

[3]During oral argument, Adamson conceded that the exclusion was unambiguous.

[4]Adamson asserts that the Underlying Action is without merit. Under the "Eight Corners Rule," the Court does not consider the merits of the Underlying Action; but, rather, whether given the nature of the claims in the pleading, taken as true, coverage may be implicated under the policy. See CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009).

5

possibility of coverage, the Court applies the "Eight Corners Rule," comparing "the four corners of the insurance policy against the four corners of the underlying complaint to determine if any allegations may be potentially covered." CACI Int'l, Inc., 566 F.3d at 153.

If the Court determines that there is, at the very least, a possibility of coverage for any of the allegations, then Mount Vernon has a duty to defend Adamson in the Underlying Action, nothwithstanding whether indemnification will ultimately result. Id. at 155. Only if there is no possibility of coverage under the Policy is Mount Vernon relieved of all obligation. Id. Stated another way, the Mold Exclusion will not relieve Mount Vernon of its duty to defend if the allegations in the Underlying Action include at least one theory of liability separate from any involving exposure to mold or bacteria.

The Underlying Action alleges five counts, each of which includes either property damage or bodily injury resulting from exposure to mold. Specifically, in Count I, Martin alleges that Adamson breached his duty to maintain fit premises under the VRLTA because he "allowed conditions of excessive moisture which led to unremedied and excessive growth of mold." (Pl.'s Br. at Ex. 2 ¶ 51.) The Count also alleges that Adamson violated building and housing codes because of the "excessive moisture conditions and subsequent *mold and bacterial growth*," ultimately causing illness and "contamination of Plaintiff's possessions." (Id. at ¶¶ 52-57) (emphasis added.) All damages sought in Count I are, therefore, the alleged result of exposure to mold. Accordingly, there is no possibility of coverage for those allegations, and Count I provides no basis for a duty to defend or indemnify.

Similarly, Count II alleges common law negligence because of Adamson's failure to remedy "water intrusion and moisture conditions caused thereto, *resulting in* the proliferation of

unreasonably dangerous mold and bacterial conditions." (Id. at ¶ 61) (emphasis added.) Adamson might mistakenly read the allegation of "water intrusion and moisture conditions" as broadly alleging potential liability for water damage to Martin's property. Such an interpretation finds additional support by the statement that "Plaintiff *could* be directly harmed by unremediated water intrusion, mold, and bacterial conditions." (Id. at ¶ 65) (emphasis added.) However, the reference to water intrusion is nothing more than a factual allegation explaining the ultimate cause of the subsequent mold and bacteria growth. Indeed, Count II pleads that the damages were caused, not by water, but "[a]s a direct result of Defendant's failure to remediate with reasonable care the *mold conditions*." (Id. at ¶ 66) (emphasis added.) Therefore, the Mold Exclusion bars any possibility of coverage and Count II also provides no basis for a duty to defend or indemnify.

The same analysis described for Counts I and II above applies equally to Counts III and IV. Count III simply incorporates the facts from Counts I and II to assert negligence *per se*, based upon the allegations that Adamson breached the VRLTA. (Id. at ¶¶ 67-71.) Similarly, Count IV alleges negligence *per se* based upon Adamson's alleged breach of his duties under the Virginia Building Code that allegedly constitute negligence. (Id. at ¶¶ 72-77.) Both counts III and IV base their allegations of statutory violation on Adamson's alleged failure to remediate the mold or otherwise maintain a mold-free premises. The allegations in Counts III and IV therefore fall within the Mold Exclusion as well and, as with Counts I and II, provide no basis for any coverage obligation on Mount Vernon.

7

Finally, Count V alleges that Adamson fraudulently[5] misrepresented whether his remediation efforts were appropriate. (Id. at ¶ 79.) It also alleges that Adamson fraudulently misrepresented whether certain substances in the apartment were, in fact, mold. (Id.) The Complaint in the Underlying Action alleges that these "misrepresentations were the proximate cause of his injuries and had all mold and moisture conditions been promptly and properly cleaned under the law, Mr. Martin might not have suffered any injury, and certainly not pulmonary fibrosis." (Id. at ¶ 82.) Although the allegation mentions "moisture conditions," much like Count II, it does not allege that the moisture conditions caused Martin's illnesses. Rather, like Count II, the reference to moisture is a reference to the underlying cause of the mold, not water damage separate and apart from the mold conditions. Indeed, Count V explains that EPA guidelines require the remediation of "all sources of moisture" in order to eliminate mold. (Id. at 80.) Because the allegations of fraud arise directly out of an alleged failure to remedy mold contamination, the Mold Exclusion applies and Count V provides no basis for coverage, including any duty to defend.

In sum, all claims for damages within the four corners of the Underlying Action are excluded by the Policy's Mold Exclusion. There is no part of any claim in the Underlying Action that could result in liability for anything other than bodily injury or property damages arising out of mold exposure.[6]

---

[5]Coverage for fraud may be prohibited by principles of public policy under Virginia law. See, e.g., Fedele v. National Liberty Ins. Co., 35 S.E.2d 766, 766-67 (Va. 1945). The Court does not need to address the issue, however, because Count V is subject to the Mold Exclusion for the same reasons as Counts I-IV.

[6]Adamson argued that he was unaware of the contents of the Mold Exclusion. It is undisputed that the Policy did, in fact, contain the provision during the relevant coverage period.

## C.  Waiver of Mount Vernon's Reservation of the Duty to Defend

Adamson argues that although the reservation of rights letter preserved Mount Vernon's right to contest indemnification, it did not preserve its right to contest its duty to defend. (Def.'s Br. at 5.) The Court understands Adamson's position as an argument that Mount Vernon has waived its right to contest its duty to defend by undertaking Adamson's defense. However, in his brief, Adamson fails to cite any authority for this proposition, and Mount Vernon characterizes this argument as "absurd." (Pl.'s Br. at 6.)

Under the right set of circumstances, such a position is not necessarily absurd. In Nortek, Inc. v. Liberty Mut. Ins. Co., 858 F. Supp. 1231 (D.R.I. 1993), for example, the insurer initially admitted to a limited obligation to defend. Id. at 1238. Nearly six months later, the insurer sent a reservation of rights letter that explicitly reserved its right to reimbursement if it later determined that it had no duty to defend. Id. at n.29. Because the court in Nortek found that there was a defense obligation, the effectiveness of the reservation of rights was moot. The court noted, however, that "it would seem that [the insurer] abandoned any 'reservation' to contest its *limited* duty to defend" because it had previously admitted that it had a duty to defend. Id. at 1231 (emphasis in original). Thus, it would appear that there is at least some authority for the argument that an insurer could waive its right to contest its duty to defend, even if it does so pursuant to a reservation of rights.

However, Nortek is distinguishable from this case. Here, Mount Vernon "chose a commendable path, by paying defense costs," while seeking declaratory relief to resolve its

---

Adamson is therefore "chargeable with notice of the [policy's] contents and is bound thereby." General Ins. of Roanoke, Inc. v. Page, 464 S.E.2d 343, 344 (Va. 1995) (citations omitted).

9

coverage dispute with Adamson. See Great Am. Ins. Co. v. Gross, 468 F.3d 199, 212 (2006). Whereas the insurer in Nortek admitted its duty to defend six months *before* sending a reservation of rights letter, Mount Vernon undertook its defense under a reservation of rights from the outset of the Underlying Action. Mount Vernon did not admit its obligation to defend Adamson; rather, it "*elected* to provide [him] with a defense subject to a full and continuing reservation of rights." (Pl.'s Reply at Ex. A) (emphasis added.) The reservation of rights letter concludes that "Mount Vernon also reserves the right to petition a court of competent jurisdiction for a determination that there is no insurance coverage *or other obligation* owed to [Adamson] under the [] policy." (Id) (emphasis added.) Therefore, Mount Vernon did not admit that it had a duty to defend Adamson, but chose to defend him pending a decision on that issue in litigation, a process that it has undertaken by filing this declaratory judgment action.

Adamson's argument that Mount Vernon waived its right to contest its duty to defend must therefore fail. The argument is not as novel as Mount Vernon characterizes it. It fails, however, because the reservation of rights procedure that is timely pursued does not admit a duty to defend, and, in fact, it expressly preserves the right to challenge any obligations under the relevant policy.

## IV. CONCLUSION

For the reasons discussed herein, it is the recommendation of this Court that the Plaintiff's motion for summary judgment (Docket No. 4) be GRANTED, and that judgment be entered declaring that Mount Vernon has no coverage obligation arising out of the Underlying Action, either for defense or indemnity.

Let the Clerk file this Report and Recommendation electronically and forward a copy to

the Honorable Henry E. Hudson, with notification to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                                            /s/
                                                Dennis W. Dohnal
                                                United States Magistrate Judge

Richmond, Virginia
Dated: September 15, 2010